UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:15-cv-00002-MOC

| | |
|---|---|
| **STEPHANIE I. HERREN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | **ORDER** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on Plaintiff's Motion for Summary Judgment (#9) and Defendant's Motion for Summary Judgment (#13). Having considered the motion and reviewed the pleadings, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

Plaintiff Stephanie I. Herren filed applications for Title II and Title XVI benefits on July 27, 2012, alleging disability since September 10, 2010. (Tr. 255, 257). Plaintiff subsequently amended the alleged onset of disability date to October 1, 2011. (Tr. 270). Plaintiff's application was denied initially on September 25, 2012, (Tr. 141, 142), and again upon reconsideration on November 6, 2012. (Tr. 175, 176). Plaintiff timely filed a request for hearing on November 28, 2012. (Tr. 216). On July 24, 2013, Administrative Law Judge Sherman D. Schwartzberg ("ALJ") conducted a hearing in Asheville, North Carolina, at which Plaintiff was represented by counsel. (Tr. 38). The ALJ denied Plaintiff's claim in a written decision dated August 20, 2013. (Tr. 16). Plaintiff requested a review of the hearing decision on September 30, 2013. (Tr. 15). The

Appeals Council denied Plaintiff's request on November 6, 2014, (Tr. 1), making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, Plaintiff timely filed this action.

**II.     Factual Background**

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth.  Such findings are referenced in the substantive discussion which follows.

**III.    Standard of Review**

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Review by a federal court is not de novo, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence.  Hays, 907 F.2d at 1456.

The Fourth Circuit has articulated the following standard relevant to substantial evidence review:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The

record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

When considering cross-motions for summary judgment, the court "examines each motion separately, employing the familiar standard under [Fed. R. Civ. P. 56]." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351 (4th Cir. 2011); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (the Court reviews each motion separately on its own merits in order to "determine whether either party deserves judgment as a matter of law") (internal citations omitted).

### IV. Substantial Evidence

#### A. Introduction

The court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits in the administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the reasons explained herein, the court finds that it is not.

#### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

    a.    An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

> b. An individual who does not have a "severe impairment" will not be found to be disabled;
>
> c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;
>
> d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;
>
> e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 404.1520(b)-(f). The burden of production during the first four steps of the inquiry rests on the claimant. Pass v. Charter, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

**C. The Administrative Decision**

With an alleged onset date of October 11, 2011, the issue before the ALJ was whether Plaintiff was disabled between that date through the date of decision. At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and that she met the insured status requirements through December 31, 2011. (Tr. 22). At Step Two, the ALJ determined that Plaintiff had the following severe impairments: left knee arthritis, fibromyalgia, obesity, major depressive disorder, and posttraumatic stress disorder. The ALJ found at Step Three that Plaintiff did not have any impairments that meet or equal any impairment in the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1 (2014). At Step

Four, the ALJ found that Plaintiff had the residual functioning capacity ("RFC") to "perform simple, routine, repetitive tasks at the light level of exertion as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) which includes: occasional climbing ramps, stairs, ladders, ropes and scaffolds; balancing; stooping; kneeling; crouching; and crawling; frequent handling and fingering with the left upper extremity; avoidance of hazards; and only occasional interaction with the public and supervisors." (Tr. 24). At Step Five, the ALJ determined that Plaintiff was incapable of performing past relevant work, but that she was not disabled because she could perform jobs that exist in significant numbers in the national economy, such as marker in retail, building cleaner, and routing clerk. (Tr. 31).

**D. Discussion**

*1. Plaintiff's Assignments of Error*

Plaintiff seeks review of the Commissioner's final administrative decision, alleging that the ALJ erred by: 1) failing to give a full function-by-function analysis of the nonexertional mental functions associated with Plaintiff's mental impairments in compliance with the directives of SSR 96-8p; 2) improperly weighing the medical opinions of record in accordance with 20 CFR §§ 404.1527(c), 416.927(c); and 3) neglecting to give legally sufficient reasons supported by substantial evidence for finding that Plaintiff's testimony was not fully credible, as required by SSR 96-7p. For the reasons explained herein, the court finds that remand is appropriate based on Plaintiff's first assignment of error.

*2. First Assignment of Error: Mental RFC*

Plaintiff first argues that the ALJ failed to comply with the directives of SSR 96-8p in assessing Plaintiff's mental impairments. Specifically, Plaintiff argues that the ALJ erred by

failing to give a complete function-by-function analysis of her nonexertional mental functions associated with her severe mental impairments of major depressive disorder and posttraumatic stress disorder. The ALJ found that Plaintiff has the following degrees of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration. (Tr. 23).

In formulating RFC,[1] the "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8P, 1996 WL 374184, at *1. The RFC assessment must address both the exertional and nonexertional capacities of the individual. SSR 96-8P, 1996 WL 374184, at *5. Nonexertional capacity considers work-related limitations and restrictions that do not depend on an individual's physical strength, such as "an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)….it also considers the ability to

---

1 The ALJ is solely responsible for determining the RFC of a claimant. 20 C.F.R. § 404.1546(c). RFC is a statement of the most a person can do in a work setting in light if his impairments, and any related symptoms, such as pain. 20 C.F.R. § 404.1545. RFC assesses an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent work schedule. SSR 96-8P, 1996 WL 374184, at *1. In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments, including the impact of any related symptoms. Id. An ALJ formulates a claimant's RFC based on all the relevant evidence in the case record. 20 C.F.R. § 404.1545. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

tolerate various environmental factors (e.g., tolerance of temperature extremes)." Id. Nonexertional capacity must be expressed in terms of work-related functions. Id. at *6. Relevant to the ALJ's finding here that Plaintiff was able to "perform simple, routine, repetitive tasks" (Tr. 24), the "basic mental demands of … unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857, at *4.

Only after that function-by-function analysis has been completed may RFC "'be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" Mascio, 780 F.3d at 636 (quoting SSR 96–8p, 61 Fed.Reg. at 34, 475). Additionally, SSR 96-8p "explains that the [RFC] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Id. (internal quotation marks and citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96–8p, 1996 WL 374184, at *7.

The Fourth Circuit's recent decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) held that remand may be appropriate where "an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Id. (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). The Circuit declined, however, to adopt a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," noting that

such rule "would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id.

Here, despite the ALJ's finding that Plaintiff had the severe mental impairments of major depressive disorder and posttraumatic stress disorder (Tr. 22), as well as moderate difficulties in social functioning and maintaining concentration, persistence or pace, (Tr. 23), the ALJ did not perform an explicit function-by-function analysis as required by SSR 96-8p. There is no discussion in the decision of how Plaintiff's mental limitations affect her abilities to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 61 Fed.Reg. 34,474, 34,477 (July 2, 1996). See also 20 C.F.R. 404.1545(c). However, the ALJ appears to have partially based his mental RFC finding on the opinion of Dr. Farrell, a state agent psychological medical consultant who completed a mental RFC assessment for Plaintiff.[2] (Tr. 29). Dr. Farrell opined that Plaintiff had the capacity to perform unskilled work in a stable, low social environment, and provided a breakdown of Plaintiff's functional abilities in terms of her mental limitations in concentration, persistence, and pace. (Tr. 135-37). Dr. Farrell opined that Plaintiff was "not significantly limited" in the ability to: carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to

---

2 "Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources." SSR 96-6P, 1996 WL 374180, *1 (S.S.A. July 2, 1996).

perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 136). Dr. Farrell also opined that Plaintiff had moderate limitations in the ability to: maintain attention and concentration for extended periods, carry out detailed instructions, and work in coordination with or in close proximity to others without being distracted by them. (Tr. 136). Ultimately, Dr. Farrell concluded that Plaintiff had the capacity to carry out 1-3 step instructions for 2-hour periods over an 8-hour day throughout a 40-hour week. (Tr. 136).

In explaining his weight to the opinion evidence, the entirety of the ALJ's discussion of Dr. Farrell's opinion in his decision reads:

> As for the supplemental security income application, Dr. Farrell assessed that the claimant retained the capacity to perform unskilled work in a stable, low social environment. The undersigned concurs with this assessment.

(Tr. 29). This court has previously held that an ALJ may satisfy the function-by-function analysis requirement by referencing a properly conducted analysis of state agency consultants. See Settlemyre v. Colvin, No. 5:14-CV-00199-MOC, 2015 WL 5457950, at *4 (W.D.N.C. Sept. 16, 2015); Linares v. Colvin, No. 5:14-CV-00120, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015) ("Because the ALJ based his RFC finding, in part, on the function-by-function analysis of the State agency consultant, the ALJ's function-by-function analysis complied with SSR 96–8p.") (citing Lemken v. Astrue, No. 5:07–CV–33–RLV–DCK, 2010 WL 5057130, at *8 (W.D.N.C. July 26, 2010); Onishea v. Barnhart, 2004 WL 1588294, at *1 (5th Cir. July 16, 2004)). However, it is not clear to the court, given the ALJ's cursory treatment of Dr. Farrell's opinion, that the ALJ "specifically adopted" the entirety of Dr. Farrell's assessment (as the Commissioner urges), or that the ALJ fully considered Dr. Farrell's functional assessment of Plaintiff's mental abilities in the workplace. Here, while the ALJ appears to have based his mental RFC on Dr.

Farrell's assessment, the ALJ made no reference whatsoever to Dr. Farrell's functional analysis of Plaintiff's limitations in concentration, persistence, and pace in his written decision. Thus, while the court acknowledges that ALJs may properly rely on function-by-function analyses performed by state agency consultants, the court here finds that the ALJ's "reliance" on such analysis is implicit at best, given that the ALJ made no mention of such analysis in his decision.

The court also notes that the ALJ's brief reference to Dr. Farrell's mental RFC assessment does not account for the issue of Plaintiff's ability to stay on task. The Fourth Circuit in <u>Mascio</u> was particularly concerned with the ALJ's failure to discuss the claimant's ability to perform relevant functions for a full workday. <u>Id.</u> <u>See also</u> <u>Newton v. Colvin</u>, No. 3:14-CV-371-RJC-DSC, 2015 WL 4411110, at *3; <u>Scruggs v. Colvin</u>, 2015 WL 2250890 at *4-5 (W.D.N.C. May 12, 2015) (W.D.N.C. July 20, 2015). Applying that standard, the Circuit in <u>Mascio</u> concluded that remand was appropriate because the ALJ had determined that the claimant could perform certain functions, but "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence in the record on that point. <u>Id.</u> Because the court was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions," remand was appropriate. <u>Id.</u> at 637. Thus, the court must determine whether the ALJ's explanation satisfies the requirement under current precedent that the Commissioner explain the work conditions under which a person with non-exertional limitations can perform a full day's work for a full work week, to wit, the conditions precedent to "staying-on-task."

Here, the ALJ discussed several pieces of medical record evidence regarding Plaintiff's mental health. The ALJ discussed, <u>inter alia</u>, Plaintiff's medical records related to her mental impairments, her history of psychological counseling, medications, psychotherapy treatments, and

previous presentations to mental counselors with a mildly depressed affect. (Tr. 27). He also noted the results of a November 2012 mental status exam, which showed that her judgment and insight were mildly impaired, her affect appeared constricted, and that her memory, fund of knowledge, and language were all intact. (Tr. 27). Additionally, Plaintiff noted some benefit from her prescription medications in terms of organizing her thought process. (Tr. 28). The ALJ noted that the Disability Determination Services doctor who saw Plaintiff diagnosed her with major depressive order, recurrent, with severe possible psychotic features, panic disorder with agoraphobia, and posttraumatic disorder. (Tr. 28). However, the ALJ's discussion of this evidence does not sufficiently allow the court to meaningfully review how the ALJ arrived at Plaintiff's mental RFC, as none of this evidence addresses her mental ability to function in the workplace or her ability to stay on task. Thus, the court finds, as the Circuit found in Mascio, that "the ALJ has determined what functions he believes [Plaintiff] can perform, but his opinion is sorely lacking in the analysis needed for us to review meaningfully those conclusions…although the ALJ concluded that Mascio can perform certain functions, he said nothing about Mascio's ability to perform them for a full workday.") Mascio v. Colvin, 780 F.3d 632, 636-37 (4th Cir. 2015).

The Commissioner urges the court to read the ALJ's reliance on Dr. Farrell's opinion as a finding that Plaintiff was not significantly limited in the ability stay on task. The court finds that the Commissioner reads too much into the ALJ's treatment of Dr. Farrell's opinion, which, as noted above, is cursory at best. Here, the ALJ made no reference whatsoever to Dr. Farrell's statements about Plaintiff's ability to stay on task, nor did the ALJ make any reference to other evidence concerning such ability in his written decision. Perhaps more significantly, there was no mention of any ability to stay on task in the hypothetical questions posed to the VE. While the ALJ

did limit Plaintiff to occasional interactions with the public and supervisors in his RFC and his hypotheticals to the VE, (Tr. 24), that restriction relates more to Plaintiff's ability to respond appropriately to supervision, co-workers, and work situations; and possibly her ability to deal with changes in a routine work setting. See SSR 96–8p, 1996 WL 374184 at *6. But such mental limitations are different than limitations in concentration, and "[s]imply accounting for some mental limitations does not satisfy review, especially where the ALJ explicitly noted a moderate difficulty [in concentration, persistence, or pace] and then failed to account for it." Hagedorn v. Colvin, No. 2:12CV85-RLV, 2015 WL 4410288, at *4 (W.D.N.C. July 20, 2015). In posing hypotheticals to the VE, the only other stated limitation relevant to Plaintiff's mental abilities was a restriction to "simple, routine, repetitive tasks" at light level of exertion. (Tr. 71-73).[3] As the Fourth Circuit recently noted in Mascio, "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Id. at 638. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit noted that "the ability to perform simple tasks is different from the ability to stay on task," and that merely limiting the hypothetical to simple or unskilled work is insufficient. Id. at 638. Because neither the ALJ's RFC nor his hypothetical to the VE addresses Plaintiff's ability to stay on task, remand is appropriate. Mascio, 780 F.3d at 638. See also Jones v. Colvin, No. 4:14-CV-00200-RN, 2015 WL 4773542, at *5 (E.D.N.C. Aug. 13, 2015) (collecting cases).

---

3 The court notes that such facts are different from those faced by the court in Franklin v. Colvin, No. 5:14-CV-00084-MOC, 2015 WL 5457922, at *2 (W.D.N.C. Sept. 16, 2015), Linares v. Colvin, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015), and other cases where the ALJ did more in his hypotheticals than limit Plaintiff to simple, routine tasks or unskilled work.

The court finds that an explanation of how Plaintiff's mental limitations affect her ability to perform work-related functions, as well as her ability to perform them for a full workday, to be necessary here. See Mascio, 780 F.3d at 638. ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.") (internal citation omitted). The court also finds that because it is left to guess how the ALJ concluded that Plaintiff could perform the relevant functions in light of her severe mental impairments and other limitations in concentration, persistence, and pace, substantial evidence does not support his decision and that remand is therefore appropriate.

### *3. Remaining Assignments of Error*

The court will not review the remaining assignments of error as it appears that the final determination of the Commissioner does not conform to the requirements of Mascio, resulting in the need for a new hearing.

### E. Conclusion

The court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's motion and brief, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is not supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Finding that there was not "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401 (internal citations omitted), Plaintiff's Motion for Summary Judgment will be granted, the Commissioner's Motion for Summary Judgment will be denied, and the decision of the Commissioner will be reversed and remanded for further proceedings consistent with this order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by Plaintiff, is **REVERSED**;

(2) Plaintiff's Motion for Summary Judgment (#9) is **GRANTED**;

(3) the Commissioner's Motion for Summary Judgment (#13) is **DENIED**; and

(4) this action is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

Signed: September 30, 2015

Max O. Cogburn Jr.
United States District Judge